UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. $14Cr/0/00$ |
| ) | |
| v. ) | VIOLATIONS: |
| ) | |
| STEVEN PALLADINO, ) | 18 U.S.C. §401(3) (Criminal Contempt) |
| ) | |
| Defendant. ) | |

### INFORMATION
### (NOTICE OF ESSENTIAL FACTS OF CHARGED CRIMINAL CONTEMPT)

1. At all times pertinent to this Information, defendant STEVEN PALLADINO ("PALLADINO") was an individual, named as a defendant in *United States Securities and Exchange Commission v. Steven Palladino, et al.*, No. 13-CV-11024-DPW, a civil case pending in the United States District Court for the District of Massachusetts.

2. On or about April 30, 2013, the Court entered an order captioned "Temporary Restraining Order" (hereinafter, the "Initial Freeze Order"). Among other things, the Initial Freeze Order froze all of PALLADINO's assets.

3. On or about May 3, 2013, following a hearing relating to the Initial Freeze Order, the Court entered a Revised Interlocutory Restraining Order ("Revised Freeze Order") that, among other things, extended the freeze on all of PALLADINO's assets.

4. Among other provisions, both the Initial Freeze Order and the Revised Freeze Order commanded that PALLADINO and Viking, "and each of their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who

1

receive actual notice of this Order by personal service or otherwise, including via facsimile or email transmission, or overnight delivery service, are restrained from taking any actions to withdraw, sell, pay, transfer, dissipate, assign, pledge, alienate, encumber, dispose of, or diminish the value of in any way (including, but not limited to, making any charges on any credit card or draws on any other credit arrangement), any funds and other assets of Palladino and Viking presently held by them, for their direct or indirect benefit, under their direct or indirect control, or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located." Initial Freeze Order, p. 3, ¶III; Revised Freeze Order, pp. 3-4, ¶III.

5. The Freeze Orders also required the submission of a written accounting to identify, among other things:

> 4. assets of every type and description with a value of at least five hundred dollars ($500) presently owned by or held for the direct or indirect benefit, or subject to the direct or indirect control, of Palladino and Viking, whether in the United States or elsewhere;
>
> 5. all accounts held at any bank, brokerage or other financial institution in the United States or elsewhere in the name, for the direct or indirect benefit, or under the direct or indirect control, of [Palladino or Viking], or in which [Palladino or Viking] has or had any direct or indirect beneficial interest, at any time from January 1, 2011 to the present; and
>
> 6. the disposition of all cash withdrawals over $500 from the following bank accounts: 1) Eastern Bank account ending in 4594 in the name of Viking and [L.J.P.]; 2) Eastern Bank account ending in 8028 in the names of Steven and [] Palladino; 3) Eastern Bank account ending in 4578 in the name of Viking and [L.J.P.]; 4) Mt. Washington Bank account ending in 1727 in the name of S&L Palladino; and 5) Mt. Washington Bank account ending in 4543 in the name of Viking.

*See* Initial Freeze Order, p. 4-5, ¶IV; *see also* Revised Freeze Order, pp. 4-6, ¶IV. The Initial Freeze Order required PALLADINO and Viking to submit such an accounting within five

2

business days of service of that order on them. The Revised Freeze Order required Viking to submit such an accounting by May 14, 2013. No accounting was submitted by either PALLADINO or Viking.

6. In addition to the Freeze Orders, on or about May 15, 2013, the Court entered an Order regarding Escrow, Repatriation and Accounting (the "Escrow Order"). This order identified an escrow agent, ordered the opening of an escrow account (the "Escrow Account"), and required PALLADINO to deposit all funds and assets not subject to attachment in state court, as well as all checks made payable to him or Viking, into the Escrow Account. PALLADINO signed an escrow agreement attached to the Escrow Order on or about May 10, 2013.

## PALLADINO'S CONTUMACIOUS ACTS

7. On various dates from in or about May 2013, through in or about November 2013, PALLADINO did knowingly and wilfully disobey and resist lawful court orders and commands of the Court by: (a) incurring thousands of dollars in charges and cash advances on credit card accounts; (b) selling a Ford F-350 truck; (c) failing to deposit proceeds from transactions into the Escrow Account; and (d) failing to undo the transfer of title to luxury vehicles and/or the subsequent encumbering of those vehicles with approximately $137,000 in new loans.

### *Use of Credit Card Accounts*

8. On or about May 7, 2013, PALLADINO opened a credit card account with Bank of America, No. ************2131. When he applied for this credit card account, PALLADINO falsely represented that: (a) he was employed by an entity called Titian Financial Group; (b) he had been employed by this entity for six years; (c) he held the title of Vice President; and (d) he had an annual salary of $150,000 per year.

3

9. Over the next three weeks, PALLADINO incurred charges totaling over $700 on the Bank of America credit card. Then, on or about May 31, 2013, PALLADINO took out $2,500 through a cash advance on the Bank of America credit card — a cash advance that he did not deposit into the Escrow Account. From June 2013 through August 2013, PALLADINO incurred more than $1,000 in additional charges on the Bank of America credit card for, among other things, restaurant ($372.40), pharmacy ($341.98), and other personal purchases. From in or about May 2013, through August 2013, PALLIDINO also made hundreds of dollars in monthly payments on the Bank of America credit card.

10. On or about June 11, 2013, PALLADINO opened a second credit card account with CitiBank, No. ************9755. On the application for the CitiBank credit card, PALLADINO falsely stated that his annual income was $200,000.

11. Over the next week, PALLADINO took a total of $1,500 in cash advances on the CitiBank credit card — cash advances that he did not deposit into the Escrow Account. During the following month, PALLADINO incurred charges and took cash advances of over $4,800. The charges incurred included, among others, $770.31 at Bloomingdale's, $500 at Mercedes Benz of Westwood, and $1,046.25 at Barney's. PALLADINO also did not deposit the cash advances PALLADINO took out during this time period into the Escrow Account. From August 2013, through November 2013, PALLADINO incurred over $13,000 in new charges on the CitiBank credit card through a $1,000 cash advance that was not deposited into the Escrow Account, a returned check, and additional purchases. PALLADINO's additional purchases included meals at restaurants ($265.05, $139.14, $221.67, $376.19, $66.05, and $137.35), and coins at a

collectables store ($4,170). From in or about June 2013, through November 2013, PALLADINO also made hundreds of dollars in monthly payments on the CitiBank credit card.

### *Sale of Ford Truck*

12. As of May 3, 2013, the date of the Revised Freeze Order, PALLADINO owned a 2004 Ford F350 truck (the "Ford Truck"). On or about June 25, 2013, PALLADINO sold the Ford Truck for $9,500 in violation of the Freeze Orders. He then failed to deposit the $9,500 in proceeds he received from the sale into the Escrow Account in violation of the Escrow Order.

### *Transferring & Encumbering Luxury Vehicles*

13. As of May 3, 2013, the date of the Revised Freeze Order, PALLADINO owned three luxury vehicles. PALLADINO owned two of these vehicles jointly with his wife — a 2012 Mercedes CLS 63 AMG Sedan (the "Mercedes"), and a 2012 Range Rover Sport LUX (the "Range Rover"). PALLADINO also was the sole owner of a 2013 Audi A5 Quattro Premium Coupe (the "Audi").

14. On or about June 26, 2013, PALLADINO and his wife transferred the Mercedes to a car dealership, and the car dealership transferred it to PALLADINO's wife. PALLADINO's wife also took out a loan of approximately $90,000 from Bank of America, N.A. using the Mercedes as collateral.

15. On or about July 15, 2013, PALLADINO transferred the Audi to a car dealership, and the car dealership transferred it to PALLADINO's wife. PALLADINO's wife also took out a loan of approximately $40,000 from TD Auto Finance, LLC using the Audi as collateral.

16. On or about July 15, 2013, PALLADINO transferred the Range Rover to a car dealership, which then transferred the Range Rover to PALLADINO's wife. PALLADINO's

wife also took out a loan of approximately $67,000 from JPMorgan Chase Bank, N.A. using the Range Rover as collateral.

17.     On or about November 15, 2013, the Court issued an order commanding that PALLADINO obtain sole ownership of the Audi, and joint ownership of the Mercedes and Range Rover — all unencumbered by the liens placed on the vehicles subsequent to the Freeze Orders — by November 22, 2013 at noon.  PALLADINO obtained joint ownership of the Range Rover and sole ownership of the Audi, but did not obtain joint ownership of the Mercedes.  In addition, on or about November 22, 2013, PALLADINO represented to the Court that he paid off the relevant liens on the three luxury vehicles.  In fact, the checks PALLADINO used to purportedly pay off the liens were returned for insufficient funds and the approximately $137,000 in relevant loans secured by the luxury vehicles remained outstanding.

## COUNTS ONE THROUGH SIXTEEN
### Contempt of Court
### (18 U.S.C. §401(3))

18. Paragraphs 1 through 17 of this Information are incorporated and re-alleged as though fully set forth herein.

19. On or about the dates set forth below, in the District of Massachusetts and elsewhere,

### STEVEN PALLADINO,

defendant herein, did knowingly and willfully disobey and resist a lawful order and command of the Court, namely, as of May 3, 2013, to hold and retain all funds and other assets of defendant and Viking Financial Group, Inc., and to prevent any withdrawal, sale, payment, transfer, dissipation, assignment, pledge, alienation, encumbrance, disposition of, or diminution of the value of in any way (including, but not limited to, making any charges on any credit card or draws on any other credit arrangement), any funds and other assets of defendant and Viking Financial Group, Inc. presently held by them, for their direct or indirect benefit, under their direct or indirect control, or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, by engaging in the following transactions:

| COUNT | DATE | VIOLATION | AMOUNT |
| --- | --- | --- | --- |
| 1 | 5/31/2013 | Cash Advance on Bank of America Credit Card | $2,500.00 |
| 2 | 6/12/2013 | Bank of America Credit Card Purchase at Strega Restaurant | $372.40 |
| 3 | 6/18/2013 | Cash Advance on CitiBank Credit Card | $500.00 |
| 4 | 6/19/2013 | Cash Advance on CitiBank Credit Card | $500.00 |

| COUNT | DATE | VIOLATION | AMOUNT |
|---|---|---|---|
| 5 | 6/20/2013 | Cash Advance on CitiBank Credit Card | $500.00 |
| 6 | 6/25/2013 | Sale of Ford F-350 Truck | $9,500.00 |
| 7 | 6/30/2013 | CitiBank Credit Card Purchase at Bloomingdale's | $770.31 |
| 8 | 7/15/2013 | CitiBank Credit Card Purchase at Mercedes-Benz of Westwood | $500.00 |
| 9 | 7/19/2013 | CitiBank Credit Card Purchase at Barney's | $1,046.25 |
| 10 | 9/23/2013 | CitiBank Credit Card Purchase at Strega Prime Restaurant | $139.14 |
| 11 | 9/25/2013 | CitiBank Credit Card Purchase at Strega Restaurant | $221.67 |
| 12 | 10/9/2013 | CitiBank Credit Card Purchase at Smith & Wollensky Restaurant | $376.19 |
| 13 | 10/23/2013 | CitiBank Credit Card Purchase at Strega Waterfront Restaurant | $66.05 |
| 14 | 11/15/2013 | CitiBank Credit Card Purchase at Tartufo Restaurant | $137.35 |
| 15 | 11/15/2013 | CitiBank Credit Card Purchase of Coins at Kenmore Collectibles | $4,170.00 |
| 16 | 11/15/2013 | Cash Advance on CitiBank Credit Card | $1,000.00 |

All in violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNTS SEVENTEEN THROUGH TWENTY-TWO
### Contempt of Court
### (18 U.S.C. §401(3))

20.     Paragraphs 1 through 17 of this Information are incorporated and re-alleged as though fully set forth herein.

21.     On or about the dates set forth below, in the District of Massachusetts and elsewhere,

### STEVEN PALLADINO,

defendant herein, did knowingly and willfully disobey and resist a lawful order and command of the Court, namely, as of May 15, 2013, to deposit all funds and assets not subject to attachment in state court, as well as all checks made payable to him or Viking Financial Group, Inc. into the escrow account established by the Order regarding Escrow, Repatriation and Accounting entered by the Court on May 15, 2013, Docket Number 27 in *United States Securities and Exchange Commission v. Steven Palladino, et al.*, No. 13-CV-11024-DPW, by failing to deposit proceeds of the following transactions into the escrow account:

| COUNT | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|
| 17 | 5/31/2013 | Cash Advance on Bank of America Credit Card | $2,500.00 |
| 18 | 6/18/2013 | Cash Advance on CitiBank Credit Card | $500.00 |
| 19 | 6/19/2013 | Cash Advance on CitiBank Credit Card | $500.00 |
| 20 | 6/20/2013 | Cash Advance on CitiBank Credit Card | $500.00 |
| 21 | 6/25/2013 | Sale of Ford F-350 Truck | $9,500.00 |
| 22 | 11/15/2013 | Cash Advance on CitiBank Credit Card | $1,000.00 |

All in violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNTS TWENTY-THREE THROUGH TWENTY-FIVE
### Contempt of Court
### (18 U.S.C. §401(3))

22. Paragraphs 1 through 17 of this Information are incorporated and re-alleged as though fully set forth herein.

23. On or about the following dates, in the District of Massachusetts and elsewhere,

### STEVEN PALLADINO,

defendant herein, did knowingly and willfully disobey and resist a lawful order and command of the Court, namely, the Court's Order of Civil Contempt dated November 15, 2013, Docket Number 70 in *United States Securities and Exchange Commission v. Steven Palladino, et al.*, No. 13-CV-11024-DPW, by failing to do the following:

| COUNT | CONTUMACIOUS ACTS |
|---|---|
| 23 | Failure to obtain joint ownership of the Mercedes CLS 63 AMG Sedan unencumbered by November 22, 2013 at 12:00 PM |
| 24 | Failure to obtain joint ownership of the 2012 Range Rover Sport LUX unencumbered by November 22, 2013 at 12:00 PM |
| 25 | Failure to obtain sole ownership of the 2013 Audi A5 Quattro Premium Coupe unencumbered by November 22, 2013 at 12:00 PM |

All in violation of Title 18, United States Code, Sections 401(3) and 2.

CARMEN M. ORTIZ
United States Attorney

By: /s/ Ryan M. DiSantis
RYAN M. DISANTIS
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: April 10, 2014

11



**U.S. Department of Justice**

*Carmen M. Ortiz*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

April 10, 2014

Clerk of Court
United States District Court
For the District of Massachusetts
U.S. Courthouse
One Courthouse Way
Boston, MA 02210

Re:   *United States v. Steven Palladino*

Dear Sir or Madam:

Enclosed for filing with the United States District Court, please find a signed Information, JS 45, Arrest Warrant, Motion for Order to Show Cause for Criminal Contempt, and Proposed Order for the purpose of opening the above-referenced case. Because this is a criminal contempt case arising out of violations of court orders entered in *United States Securities and Exchange Commission v. Steven Palladino, et al.*, No. 13-CV-11024-DPW, the matter should be assigned to the Hon. Douglas P. Woodlock.

If you have any questions, please do not hesitate to contact me at (617) 748-3251. Thank you for your attention to this matter.

Very truly yours,

CARMEN M. ORTIZ
United States Attorney

By: _____
RYAN M. DISANTIS
Assistant U.S. Attorney

Enclosures

cc:   Francis J. DiMento, Esq. (counsel for defendant)
      (with all enclosures except for Arrest Warrant)